AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
District of Nebraska

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| | ) | |
| | ) | Case No.  8:17MJ294 |
| 2008 Maroon, Kia Spectra, bearing Washington License | ) | |
| Plate BCU5781, VIN: KNAFE122885582571 | ) | |
| | ) | |

FILED
US DISTRICT COURT
DISTRICT OF NEBRASKA

AUG 1 7 2017

OFFICE OF THE CLERK

SEALED


## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

2008 Maroon, Kia Spectra, bearing Washington License Plate BCU5781, VIN: KNAFE122885582571

located in the _____ District of _____ Nebraska _____ , there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment A

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21:841, 846 | Conspiracy to distribute and possess with intent to distribute controlled substance |
| 18:1956 | Money Laundering |

The application is based on these facts:

See attached Affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

SA Frank Feden, DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 8·17·17

City and state:  Omaha, Nebraska

_____
*Judge's signature*

SUSAN M. BAZIS, United States Magistrate Judge
*Printed name and title*

Frank Feden, a Special Agent with the United States Drug Enforcement Administration (DEA), being duly sworn, deposes and states:

1. I am presently employed by the DEA as a Special Agent (SA), and have been so employed since May 2003. During the course of my employment with the DEA, I have attended and graduated from the DEA Academy in Quantico, Virginia. In September 2003, I was assigned to the DEA's Omaha District Office. During my time as a DEA Special Agent, I have been trained in specialized controlled substance investigative matters including, but not limited to, drug use, drug interdiction, drug detection, money laundering techniques, locating hidden assets derived from narcotics trafficking and the investigation of individuals involved in the smuggling, cultivation, manufacturing, illicit trafficking of controlled substances and the diversion of prescription drugs. In addition, I have attended schools pertaining to controlled substance, controlled substance investigations, money laundering and specialized financial investigations related to controlled substance violations.

2. In addition to my training and experience discussed above, during my employment as a Special Agent with the DEA, I have performed the following tasks relevant to this investigations:

3. I have participated in numerous controlled substance investigations, which have resulted in the arrest of numerous individuals, the seizure of illicit drugs and drug-related evidence and the forfeiture of drug-related assets. I have also participated in and/or executed numerous search and seizure warrants authorizing the search of locations of drug traffickers and their co-conspirators and vehicles used to transport controlled substances. Materials searched for and recovered in these locations have included the following: controlled substances, packaging materials, scales, cutting agents, weapons, documents and papers reflecting the identity of co-conspirators, receipts for concealed investments and proceeds derived from the distribution of controlled substances and electronic equipment used by violators to communicate and coordinate criminal activity.

4. During these investigations, I have participated in surveillance operations, observing and recording movements of persons trafficking in drugs and those suspected of trafficking in drugs.

5. The facts set forth in this affidavit are known to me as a result of my personal participation in this investigation and through conversations with other investigators with the DEA and other law enforcement officers, as well as reviewing reports and documents prepared by investigators investigating this matter.

6. Based on my training, experience and participation in this and other drug investigations, I know that it is common for drug traffickers and money launderers to maintain in their residences, the items listed in Attachment A.

**LOCATIONS TO BE SEARCHED**

- A single family residence located at 2924 South 18th Street, Omaha, Nebraska. 2924 South 18th Street is described as a one and a half story wood sided structure painted white with an enclosed front porch. The residence has detached shed in the back yard and the residence faces east. The numbers "2924" are affixed to the residence above the front porch. 2924 South 18th Street also has the legal description Oklahoma SE Rogers, Lot 55 Block 0.
- A red 2008 KIA Spectra, Washington plate: BCU5781, registered to Kenny BOJORQUEZ-Sanchez, 722 W Dalton Ave, Spokane, Washington, VIN: KNAFE122885582571

**FACTS AND OPINIONS**

7. Since October 2016, DEA Omaha Office has been investigating the Francisco Javier TINOCO-Pinata Drug Trafficking Organization (DTO). Over the course of the investigation, the DEA Omaha Office has conducted four buy/walk operations netting approximately three and a half pounds of methamphetamine, including a total of two

pounds from Baltazar QUINTERO-Rodriguez. In July 2017, the DEA Omaha Office also seized approximately $95,000.00 in U.S. Currency from a vehicle that had been observed departing QUINTERO-Rodriguez's residence in Council Bluffs, Iowa. A financial investigation revealed that this DTO, including QUINTERO-Rodriguez, is utilizing three methods to send the drug proceeds to Mexico. Those three methods are bulk cash smuggling, bank cash deposits, and wiring money through remitters (Western Union, MoneyGram, etc.).

8. On July 24, 2017, SA Jason Black and Assistant United States Attorney (AUSA) Christopher Ferretti appeared before the Honorable Laurie Smith Camp, Chief United States District Judge, District of Nebraska and presented an affidavit and application in support of the authorization of interception of wire and electronic communications over telephone number 402-871-4323 (**TT1**), utilized by QUINTERO-Rodriguez. On the same date, the Honorable Judge Smith Camp authorized the interception of TT1 in U.S. District Court matter 8:17WT11. Investigators activated the T-III on **TT1** on July 26, 2017, and have since intercepted the communications of QUINTERO-Rodriguez and other targets of the investigation. Based upon intercepted communications and surveillance, investigators believe QUINTERO-Rodriguez and his associates are responsible for the distribution of multiple pounds of methamphetamine and the collection of proceeds derived from methamphetamine sales.

9. On July 30, 2017, from court authorized interceptions of wire and electronic communications over **TT1**, investigators learned that QUINTERO-Rodriguez would deliver $150,000.00 in U.S. Currency to an unknown male at the Supermercado Nuestra Familia grocery store, located at 1826 Vinton Street, Omaha, Nebraska. The unknown male utilized 509-558-0022 to communicate with QUINTERO-Rodriguez. Later on that date, investigators observed QUINTERO-Rodriguez meet with an older unknown Hispanic male at the Supermercado Nuestra Familia grocery store. There, QUINTERO-Rodriguez gave the unknown male a bag that investigators believe contained $150,000.00 in U.S. currency. Investigators then observed the unknown male walk to a nearby residence located at 2924 South 18th Street in Omaha, Nebraska (Target Residence). At

the Target Residence, investigators observed an out of state vehicle bearing a Washington state license plate BCU5781 (Target Vehicle). A check of that license plate with the Washington Department of Motor Vehicles revealed the registered owner to be registered to Kenny BOJORQUEZ-Sanchez, 722 West Dalton Avenue, Spokane, Washington. Investigators served a subpoena on T-Mobile for 509-558-0022 and learned it was subscribed to Roman Garcia at 4016 Main Street in Spokane, Washington.

10. On July 30, 2017, investigators installed a court ordered GPS vehicle tracker on the Target Vehicle, and investigators have been conducting a combination of physical surveillance and video surveillance of the Target Residence and Target Vehicle. Investigators have observed little to no activity at the Target Residence since watching the unknown male walk into the house with the $150,000.00. On a couple of occasions, investigators have observed another unknown male arrive at the Target Residence in a work truck and conduct maintenance on the exterior of the residence. The maintenance man never stays at the residence and he has never been seen meeting anyone at that location. Investigators have not seen anyone else enter or leave the residence since the unknown male entered the Target Residence carrying the currency. The Target Vehicle has been parked in the back of the residence and has not moved since July 30, 2017.

11. On August 16, 2017, Investigators observed an unknown male arrive at the Target Residence, driving a blue Chrysler Sebring convertible with red and white paper license plates. The unknown male then walked onto the enclosed front porch and he bent down. The unknown male appeared to retrieve a key to the front door from an area near where a door mat would be located. The unknown male was then observed walking into the residence through the front door. A few minutes later, the unknown male was observed exiting the Target Residence. The UM retrieved a large bag from the passenger side of the vehicle and walked back into the Target Residence. At approximately 1:00 am on August 17, 2017, surveillance on the residence was terminated. At that time, the unknown male had not exited the residence nor had the vehicle left.

12. On August 17, 2017, investigators checked with representatives from the Omaha Public Power District (OPPD) and Metropolitan Utilities District (MUD), as to who was

responsible for the utilities at Target Residence. Both representatives stated the person responsible for utilities at the Target Residence is Aldo CARDENAS. Additionally on this date, investigators conducted a check of the Douglas County, Nebraska, Assessor's web site and found Aldo CARDENAS etal, 13606 South 42nd Avenue, Bellevue, Nebraska, to be the owner of Target Residence.

13. On August 17, 2017, at approximately 9:00 am, investigators resumed surveillance at the residence. At that time, the Chrysler Sebring was still park in the same location it had been the previous night.

14. On August 17, 2017, at approximately 10:40 am, investigators observed a Hispanic male in a blue shirt and a fedora hat exit the Target Residence and enter the Chrysler Sebring and depart the residence. A short time later, Omaha Police Officer Jeff Vaughn stopped the Hispanic male in the Sebring at 16 Street and Deer Park Avenue in Omaha for operating a vehicle without license plates. The Hispanic male provided Officer Vaughn a Nebraska driver's license which identified the Hispanic male as Octavio AMBRIZ. Officer Vaughn discovered that AMBRIZ's privilege to drive in Nebraska was suspended and an Omaha misdemeanor arrest warrant had been issued for his arrest. Officer Vaughn placed AMBRIZ under arrest for the warrant.

15. After arresting AMBRIZ and while still at the location of the traffic stop, Officer Vaughn was approached by two Hispanic males in a silver Honda Accord with paper dealer tags. The two Hispanic males identified themselves to Officer Vaughn as friends of AMBRIZ and asked if they could take his vehicle so it would not be towed. After Officer Vaughn told them it was being impounded, they asked if Officer Vaughn would ask AMBRIZ where the propane was. Officer Vaughn agreed to their request and he asked AMBRIZ where the propane was. AMBRIZ responded, "In the trunk of my car." AMBRIZ refused to answer any other questions from the Hispanic males and they departed the location of the traffic stop in the silver Honda. Officer Vaughn did not find a propane tank in the Sebring during an inventory search prior to it being towed.

16. From my training and experience, I am aware that drug traffickers used coded language to prevent law enforcement from discovering their activities. I believe "propane "is a code word used by AMBRIZ and his associates for either money or drugs and the vehicle AMBRIZ referred to is the Target Vehicle.

17. During the booking process, AMBRIZ provided 402-238-4474 as his contact number. Investigators checked that number with collected subpoena phone records of DTO members and learned the number provided by AMBRIZ had been in contact with a phone number used by Alejandro VALDIVA-Ortiz (aka Milusos VALDIVIA-Ortiz) as recently as August 4, 2017. From intercepted calls from **TT1**, VALDIVIA-Ortiz has been identified as a money remitter and someone who makes fake identifications for the DTO. Through the comparison, investigators also learned that the phone number had been in contact with 402-301-4057. From intercepted calls from **TT1**, investigators know that an unknown male using that phone number asked QUINTERO-Rodriguez if he had any pounds of methamphetamine available and QUINTERO-Rodriguez explained to the unknown male that he was currently out.

18. From my training and experience, I am aware that larger DTO will use residences to store larger amounts of drugs and drug proceeds and they will use other residences and locations to conduct drug sales. In my experience, the residences used for storing larger amounts of drugs and drug proceeds are only known to a very few members of the DTO and the DTO keeps activity at those location to a minimum so not to draw the attention of the Police to the residence. From my training and experience, I know that besides drugs and currency, drug traffickers may keep drug ledgers, drug notes, money counting machine, cellular phones and other electronic devices used to communicate with other DTO members, travel receipts, scales and other paraphernalia used in separating and dividing up shipments of drugs at a stash house. From my training and experience, I believe the Target Residence is or has been used by this DTO as a storage residence for illegal drugs or the proceeds derived from the sale of illegal drugs.

19. Based upon the above facts and opinions, I respectfully submit that there is probable cause to believe that at the place described as 2924 South 18th Street, Omaha, Douglas County, Nebraska, which is described as a one and a half story wood sided structure painted white with an enclosed front porch with the numbers "2924"are affixed to the residence above the front porch, and the vehicles located on the premises, there is now located on those premises, methamphetamine, drug packaging, scales, electronic equipment used by violators to communicate and coordinate criminal activity, drug proceeds, ledgers, records, notes, or instrumentalities pertaining to the sale or distribution of controlled substances, which are believed to constitute evidence of a crime in violation of Title 21, United States Code, Sections 841 and 846 involving the distribution of methamphetamine, a Schedule II controlled substance, and Title 18 United States Code, Section 1956, money laundering.

The affiant states that the above statements are true and correct to the best of his knowledge, information and belief.

Frank E. Feden
Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me this ____17____ day of August, 2017.

SUSAN M. BAZIS
United States Magistrate Judge

## ATTACHMENT A

Evidence of a violation or violations of 21 U.S.C. §§ 841, 846 (conspiracy to distribute and possess with intent to distribute controlled substances; 18 U.S.C. § 1956 (money laundering), including the following:

a. Methamphetamine, cocaine and any other illegal contraband and controlled substances.

b. Books, records, receipts, notes, ledgers, and other papers relating to the transportation, ordering, purchase and distribution of controlled substances.

c. Address and telephone books and papers reflecting names, addresses or telephone numbers.

d. Books, records, receipts, bank statements and records, money drafts, letters of credit, money order and cashiers checks, receipts, pass books, bank checks and any other items evidencing the obtaining, secreting, transfer, or concealment of assets in the obtaining, secreting, transfer, concealment or expenditure of money.

e. Purchase agreements, rental agreements, tax records, financial documents, to include but not limited to receipts, invoices, bills, ledgers, journals and other records related to income, expenditures and the purchase or sale of assets.

f. Brokerage account statements, investment related records, other documents and items evidencing the obtaining, secreting, transfer and/or concealment of assets and the obtaining, secreting, transfer, concealment, and/or expenditure of money.

g. Electronic equipment, such as cellular telephones, computers, telex machines, facsimile machines, telephone answering machines, telephone paging devices, currency counting machines, and any information stored in memory or contained in any related hardware and software.

h. United States currency, precious metals, jewelry and financial instruments, including but not limited to, stocks and bonds.

i. Photographs, in particular, photographs of conspirators, of assets, or of controlled substances, and other documents identifying associates and conspirators.

j. Paraphernalia for packaging, cutting, weighing and distributing controlled substances, including but not limited to, scales and baggies.

k. Indicia of occupancy, residency, or ownership of the premises, including but not limited to, utility and telephone bills, canceled envelopes, and keys.

l. Firearms

m. Any locked or closed containers believed to contain any of the above listed evidence.

AO 93  (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

for the

District of Nebraska

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched* | ) | |
| *or identify the person by name and address)* | ) | Case No.    8:17MJ294 |
| | ) | |
| 2008 Maroon, Kia Spectra, bearing Washington License | ) | |
| Plate BCU5781, VIN: KNAFE122885582571 | ) | |

**COPY**

**SEALED**

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____   _____ District of __ _____ Nebraska _____
*(identify the person or describe the property to be searched and give its location)*:

2008 Maroon, Kia Spectra, bearing Washington License Plate BCU5781, VIN: KNAFE122885582571

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment A

**YOU ARE COMMANDED** to execute this warrant on or before _____ August 30, 2017 _____ *(not to exceed 14 days)*
☑ in the daytime 6:00 a.m. to 10:00 p.m.      ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____   __ Susan M. Bazis _____ .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*    ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:  8-17-17 at 4:58pm       *Susan M Bazis*
                                                                                *Judge's signature*

City and state:        Omaha, Nebraska                    Susan M. Bazis, United States Magistrate Judge
                                                                                *Printed name and title*

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2)

| Return | | |
|---|---|---|
| Case No.:<br><br>8:17MJ294 | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name of any person(s) seized: | | |

| Certification |
|---|

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

Evidence of a violation or violations of 21 U.S.C. §§ 841, 846 (conspiracy to distribute and possess with intent to distribute controlled substances; 18 U.S.C. § 1956 (money laundering), including the following:

a. Methamphetamine, cocaine and any other illegal contraband and controlled substances.

b. Books, records, receipts, notes, ledgers, and other papers relating to the transportation, ordering, purchase and distribution of controlled substances.

c. Address and telephone books and papers reflecting names, addresses or telephone numbers.

d. Books, records, receipts, bank statements and records, money drafts, letters of credit, money order and cashiers checks, receipts, pass books, bank checks and any other items evidencing the obtaining, secreting, transfer, or concealment of assets in the obtaining, secreting, transfer, concealment or expenditure of money.

e. Purchase agreements, rental agreements, tax records, financial documents, to include but not limited to receipts, invoices, bills, ledgers, journals and other records related to income, expenditures and the purchase or sale of assets.

f. Brokerage account statements, investment related records, other documents and items evidencing the obtaining, secreting, transfer and/or concealment of assets and the obtaining, secreting, transfer, concealment, and/or expenditure of money.

g. Electronic equipment, such as cellular telephones, computers, telex machines, facsimile machines, telephone answering machines, telephone paging devices, currency counting machines, and any information stored in memory or contained in any related hardware and software.

h. United States currency, precious metals, jewelry and financial instruments, including but not limited to, stocks and bonds.

i. Photographs, in particular, photographs of conspirators, of assets, or of controlled substances, and other documents identifying associates and conspirators.

j. Paraphernalia for packaging, cutting, weighing and distributing controlled substances, including but not limited to, scales and baggies.

k. Indicia of occupancy, residency, or ownership of the premises, including but not limited to, utility and telephone bills, canceled envelopes, and keys.

l. Firearms

m. Any locked or closed containers believed to contain any of the above listed evidence.